FINDLEY, *Appellant*, v. FINDLEY *et al.*

1. **Fraudulent Conveyance :** INJUNCTION. The evidence in this case reviewed and the action of the trial court, reversed, in dismissing complainant's bill, whereby he seeks to enjoin a sale under a deed of trust, because made in fraud of creditors.

2. ———. A sale, under a valid deed of trust, if made to defraud creditors, may be set aside, and the creditor be permitted to redeem the land from the lien.

*Appeal from Johnson Circuit Court.*—HON. N. M. GIVAN, Judge.

REVERSED AND REMANDED.

*A. Comingo* for appellant.

(1) Fraud need not be proved by positive evidence. Trivial facts and circumstances may afford satisfactory proof of fraudulent intent. *Leavitt v. Laforce*, 71 Mo. 253; *Massey v. Young*, 73 Mo. 260; *Hopkins v. Stewart*,

58 Mo. 201; *Burgert v. Borchert*, 59 Mo. 80; *King v. Moon*, 42 Mo. 557; *Frederick v. Allgaier*, 88 Mo. 598. (2) A purchaser of land who receives a deed therefor, made for the purpose of defrauding others, directly or indirectly, notwithstanding he pays full value for the property, will be regarded as a party to the fraud, and his conveyance will be held to be fraudulent. *Henderson v. Henderson*, 55 Mo. 534; *Ames v. Gilmore*, 59 Mo. 537; *Potter v. McDowell*, 31 Mo. 62; *Potter v. Stevens*, 40 Mo. 229; *Allen v. Berry*, 40 Mo. 282; *Shelley v. Boothe*, 73 Mo. 74–76; *Drury v. Cross*, 7 Wall. 299; *State ex rel. v. Benoist*, 37 Mo. 500; *Dougherty v. Cooper*, 77 Mo. 528. (3) The *lis pendens* in the case of *David Findley v. Hannah J. Findley* imparted notice to all the world of the pendency of [that suit, and of the equities the plaintiff sought to protect thereby. One who purchases property with notice that it is in litigation is not an innocent purchaser. *Buford v. Keokuk*, 3 Mo. App. 159. This is unquestionably the rule as to the doctrine of *lis pendens*, after service of process. *Herrington v. Herrington*, 27 Mo. 560; *Metcalf v. Smith's heirs*, 40 Mo. 572; *Bailey v. McGinnis*, 57 Mo. 362. (4) Notice of antecedent fraudulent acts of a vendor or mortgageor, affecting, or intended to affect the title to the property sold, or incumbered, is sufficient to put the purchaser, or mortgagee, on inquiry; and if he fail to make it, he cannot be regarded as a purchaser or incumbrancer without notice. *State ex rel. v. Estil*, 6 Mo. App. 6; *Eck v. Hatcher*, 58 Mo. 235; *Fellows v. Wise*, 55 Mo. 413. One who takes with notice of an equity takes subject to that equity. *Major v. Buckley*, 51 Mo. 227; *Meir v. Bloom*, 80 Mo. 179; *Widdicombe v. Childers*, 84 Mo. 382. (5) A sale under a deed of trust should be set aside, unless it was conducted with perfect fairness. Unless it has been so conducted, and the trustee has acted with the utmost fairness toward all who are interested in the property sold, mortgagees are

not innocent, although they may be subsequent in-
cumbrancers.    *Stofel v. Schoeder,* 62 Mo. 147; *Ben-
kenhorf v. Vincenz,* 52 Mo. 441; *Roche v. Farnsworth,*
106 Mass. 509; *Montague v. Dawes,* 14 Allen, 369.

*Cockrell & Suddath* for respondents.

(1) Even if the acts of Albert J. and Hannah
Findley were fraudulent, it is not shown that either the
bank or Dawson was a party to the same or cognizant
thereof.    (2) A fraudulent grantee may buy a good title
under a prior valid lien.    *Funkhauser v. Lay,* 78 Mo.
459.

NORTON, C. J.—This suit is in equity, and it is
sought by it to enjoin and restrain the sale of certain
land in Johnson county conveyed by defendant, A. L.
Findley, by deed of trust to his co-defendant, Houts, in
trust to secure the payment of a note for five hundred
dollars, executed by said Findley to his co-defendant,
Dawson.    The petition prays that said deed be declared
void, and for all proper relief.    The ground for the relief
asked is stated to be that the said deed was made in
fraud of plaintiff's right.    On a hearing the bill was
dismissed and judgment rendered for defendants, from
which the plaintiff has appealed.

The following facts are established by the record:
That, in May, 1882, plaintiff sued Hannah L. Findley in
the Johnson county circuit court on her several prom-
issory notes, aggregating about eight hundred dollars in
amount.    At the time this suit was brought, said Hannah
owned the land in controversy, and that, between the
time said suit was brought and ten or eleven days before
judgment was rendered for plaintiff, which was on the
thirteenth of June, 1882, she conveyed said land to her
son, A. L. Findley, one of the defendants in this suit,
for the expressed consideration of one thousand dollars.
Plaintiff, after obtaining said judgment, instituted a

suit, on the third day of July, 1882, alleging that the above conveyance of said Hannah to her son was made without consideration, and in fraud of his rights as a creditor, and asking the court to declare it void and decree a sale of the land for the payment of his judgment. On the same day suit was brought he also filed notice of *lis pendens*.

In March, 1883, a decree was rendered in said suit vacating said deed for fraud, and the land was ordered to be sold, and it was accordingly sold on the fifteenth of June, 1883, at which sale plaintiff became the purchaser and received a sheriff's deed. It further appears that, on the sixth of October, 1881, the said Hannah Findley executed a deed of trust conveying the land to O. L. Houts to secure the payment of her note, given to the Bank of Warrensburg for one hundred and seventy-five dollars, payable one year after date.

It further appears that, about the ninth of January, 1883, E. W. Dawson, one of the defendants in this suit, bought said note of said bank, had the land advertised for sale on the twelfth of February, 1883, at which time it was sold to A. L. Findley, who received a deed from Houts, the trustee, and on the same day executed a deed of trust conveying the land to Houts, trustee, to secure the payment of his note for five hundred dollars, given at that time to Dawson. It is a threatened sale under this deed of trust which plaintiff in this suit seeks to enjoin, and the ground for the relief asked is the alleged fraud of Dawson and Findley in foreclosing the bank deed of trust and in the execution of the deed of trust by A. L. Findley for Dawson's benefit.

That the purpose of A. L. Findley, in accepting the deed to the land from his mother, was to defeat plaintiff in the collection of his debt against her, and, therefore, fraudulent, does not admit of question, and that fact was so found in the suit brought to vacate it, and the

question remaining is, whether the sale under the bank deed of trust, and the deed of trust made by A. L. Findley to secure Dawson in the payment of his note for five hundred dollars, was made in pursuance of a like purpose.

This question is to be solved by the evidence. Houts, the trustee in the bank deed of trust, testified that he had no agency in having the land advertised for sale; and only knew of it a short time before the sale, getting his information either from Crutchfield or Dawson; that he did not recollect who was present at the sale, or who bid on the land, or what was bid; that he received no money, and paid out none. Crutchfield testified that, about the first of January, 1883, Dawson sent the bank note to him, either by A. L. Findley or Mr. Warren, and the latter requested him to advertise the land in the *Knobnoster Gem;* that Findley talked with him and wanted to know if he could buy the land; that the suit of *David Findley v. H. J.* and *A. L. Findley* was pending at that time; and the sale took place a few days before the suit was tried. The land was sold for about two hundred dollars, about the amount of the bank debt, and A. L. Findley bought and received the trustee's deed, in which the consideration expressed was five hundred dollars, as paid by said Findley; that Dawson wrote that he would let Findley buy the land if he would give him a deed of trust on it for all he owed him.

It, also, appears, from other evidence, that A. L. Findley, on receiving the said deed, gave his note to Dawson for five hundred dollars, and also a deed of trust on the land to secure the same, when, according to the evidence of Dawson himself and that of Findley, the latter only owed Dawson three hundred and eighty dollars, in which was included the bank debt.

Dawson testified, among other things, as follows:

"A. L. Findley and I made a contract that he might buy the land in if he would give me a deed of trust for all he owed me. I thought I might get all my debt in. I told him before the sale I would make it bring in all he owed me. * * * I sent the deed and note to Mr. Crutchfield. * * * That evening, after I sent the deed of trust to Crutchfield, I met Albert Findley on the street, and we had a talk about his buying the land at the sale. I think I told Findley that I had bought the bank note. I paid for it in full. I thought it would be more advantageous to me to buy it. I don't know why I made the sale when I did. I never demanded pay for the note from either of the Findley's. I knew they did not have a dollar. I did not instruct Crutchfield to advertise the land in the *Knobnoster Gem*. I never instructed any one to advertise it in that paper. I did not know what paper it was to be advertised in until Albert Findley told me the evening after I had sent the deed of trust to Crutchfield. He told me that evening when the sale was to be. * * * It was late in the evening when I met Findley and made the arrangements about his buying it. He told me then when the land was to be sold. I did not know before that when it was to be sold. I saw him twenty times after that and before the sale, and we frequently talked about it. He also talked about his uncle David Findley's suit, all in connection with this sale. I don't know how much he agreed to pay for the land and did at the time. I was at the sale, but do not know what it brought. I held, from February 12, 1883, to August 7, 1884, Albert Findley's notes, one for five hundred dollars and one for $168.50. He actually owed me about three hundred and eighty dollars."

A. L. Findley testified that he had nothing to do with advertising the land; that it was worth a good deal more money than the bank debt; that Dawson, previous to the sale, agreed that he might buy it in if he would give

Dawson a deed of trust to secure him in all that he owed him ; that, not counting the bank debt, he owed Dawson a note for $168; that he bought the land, but does not state what he bid ; that he gave Dawson his note for five hundred dollars and deed of trust on the land to secure it.

Evidence was also offered tending to show that the *Knobnoster Gem* was a paper of limited circulation, published several miles from Warrensburg, where the land was to be sold, and that there were two papers published there with greatly larger circulation.

We are of the opinion that the court erred in dismissing plaintiff's bill, and that the trustee's sale under the bank deed of trust ought to be set aside and plaintiff allowed to redeem by paying the debt secured thereby, and that the enforcement of the deed of trust executed by Findley to secure the payment of the five hundred dollar note given to Dawson be perpetually enjoined.

Judgment reversed and cause remanded with directions to the circuit court to enter up a decree in conformity to the above. All concur.